1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

KIMBERLY CATHERINE NASH,           )   Case No. EDCV 12-816 JC
                                   )
                 Plaintiff,        )
                                   )   MEMORANDUM OPINION
          v.                       )
                                   )
                                   )
MICHAEL J. ASTRUE,                 )
Commissioner of Social Security,   )
                                   )
                 Defendant.        )
_____   )

## I.    SUMMARY

On May 30, 2012, plaintiff Kimberly Catherine Nash ("plaintiff") filed a Complaint seeking review of the Commissioner of Social Security's denial of plaintiff's application for benefits.  The parties have consented to proceed before a United States Magistrate Judge.

This matter is before the Court on the parties' cross motions for summary judgment, respectively ("Plaintiff's Motion") and ("Defendant's Motion").  The Court has taken both motions under submission without oral argument.  See Fed. R. Civ. P. 78; L.R. 7-15; May 31, 2012 Case Management Order ¶ 5.

///
///

1

1    Based on the record as a whole and the applicable law, the decision of the

2    Commissioner is AFFIRMED.  The findings of the Administrative Law Judge

3    ("ALJ") are supported by substantial evidence and are free from material error.[1]

4    **II.    BACKGROUND AND SUMMARY OF ADMINISTRATIVE**

5    **DECISION**

6    On May 18, 2009, plaintiff filed an application for Disability Insurance

7    Benefits.  (Administrative Record ("AR") 159).  Plaintiff asserted that she became

8    disabled on March 14, 2008, due to spondyloarthropathy, diffuse myofascial pain

9    syndrome, arthritis, bulging disc (neck C2/C3), bone spurs, confusion, memory

10   loss, tendinitis, muscle pain and spasms, depression, bone pain, fatigue, severe S1

11   joint pain, ankylosing spondylitis, hip pain, neck pain, peripheral joint pain and

12   swelling (arthritis), and extreme pain and fatigue.  (AR 169).  The ALJ examined

13   the medical record and heard testimony from plaintiff (who was represented by

14   counsel) and a vocational expert on September 8, 2010.  (AR 22-60).

15   On November 19, 2010, the ALJ determined that plaintiff was not disabled

16   through the date of the decision.  (AR 10-21).  Specifically, the ALJ found:

17   (1) plaintiff suffered from the following severe impairments:  spondylosis, cervical

18   joint without myelopathy, ankylosing spondylitis, bursitis, hip seborrheic

19   keratosis, obesity, hyperlipidemia, depression, and opioid dependence in early

20   remission (AR 12); (2) plaintiff's impairments, considered singly or in

21   combination, did not meet or medically equal a listed impairment (AR 13);

22   (3) plaintiff retained the residual functional capacity to perform a range of light

23   ///

24   ///

25

26   ───────────────

         [1]The harmless error rule applies to the review of administrative decisions regarding
27   disability.  See Molina v. Astrue, 674 F.3d 1104, 1115-22 (9th Cir. 2012) (discussing contours of
     application of harmless error standard in social security cases) (citing, *inter alia*, Stout v.
28   Commissioner, Social Security Administration, 454 F.3d 1050, 1054-56 (9th Cir. 2006)).

1  work (20 C.F.R. § 404.1567(b)) with several additional limitations[2] (AR 13-14);

2  (4) plaintiff could perform her past relevant work as a president, a sales

3  representative in advertising, and a sales representative for security systems (AR

4  20); and (6) plaintiff's allegations regarding her limitations were only partially

5  credible (AR 15).

6      The Appeals Council denied plaintiff's application for review.  (AR 1).

7  **III.  APPLICABLE LEGAL STANDARDS**

8      **A.   Sequential Evaluation Process**

9      To qualify for disability benefits, a claimant must show that the claimant is

10  unable "to engage in any substantial gainful activity by reason of any medically

11  determinable physical or mental impairment which can be expected to result in

12  death or which has lasted or can be expected to last for a continuous period of not

13  less than 12 months." Molina v. Astrue, 674 F.3d 1104, 1110 (9th Cir. 2012)

14  (quoting 42 U.S.C. § 423(d)(1)(A)) (internal quotation marks omitted).  The

15  impairment must render the claimant incapable of performing the work claimant

16  previously performed and incapable of performing any other substantial gainful

17  employment that exists in the national economy.  Tackett v. Apfel, 180 F.3d 1094,

18  1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

19      In assessing whether a claimant is disabled, an ALJ is to follow a five-step

20  sequential evaluation process:

21  ///

22

23      [2]The ALJ determined that plaintiff:  (i) could lift and/or carry 20 pounds occasionally and

24  10 pounds frequently; (ii) could stand and/or walk for six hours out of an eight-hour workday
    with regular breaks; (iii) could sit for six hours out of an eight-hour workday with regular breaks;

25  (iv) had no limitation in pushing and/or pulling, other than as indicated for lifting and/or
    carrying; (v) could not climb ladders, ropes or scaffolds; (vi) was limited to occasional postural

26  activities; (vii) could do occasional stooping, kneeling, crouching and crawling; (viii) could
    occasionally repetitively tilt her neck up and down; (ix) would be off task five percent of the

27  work day; (x) could be absent one to two work days a month; and (xi) had episodic difficulty

28  performing complex/detailed work.  (AR 13-14).

3

(1)   Is the claimant presently engaged in substantial gainful activity?  If so, the claimant is not disabled.  If not, proceed to step two.

(2)   Is the claimant's alleged impairment sufficiently severe to limit the claimant's ability to work?  If not, the claimant is not disabled.  If so, proceed to step three.

(3)   Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1?  If so, the claimant is disabled.  If not, proceed to step four.

(4)   Does the claimant possess the residual functional capacity to perform claimant's past relevant work?  If so, the claimant is not disabled.  If not, proceed to step five.

(5)   Does the claimant's residual functional capacity, when considered with the claimant's age, education, and work experience, allow the claimant to adjust to other work that exists in significant numbers in the national economy?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1052 (9th Cir. 2006) (citing 20 C.F.R. §§ 404.1520, 416.920); see also Molina, 674 F.3d at 1110 (same).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five.  Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001) (citing Tackett, 180 F.3d at 1098); see also Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (claimant carries initial burden of proving disability).

**B.    Standard of Review**

Pursuant to 42 U.S.C. section 405(g), a court may set aside a denial of benefits only if it is not supported by substantial evidence or if it is based on legal

1  error.  Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir.

2  2006) (citing Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1457

3  (9th Cir. 1995)).  Substantial evidence is "such relevant evidence as a reasonable

4  mind might accept as adequate to support a conclusion."  Richardson v. Perales,

5  402 U.S. 389, 401 (1971) (citations and quotations omitted).  It is more than a

6  mere scintilla but less than a preponderance.  Robbins, 466 F.3d at 882 (citing

7  Young v. Sullivan, 911 F.2d 180, 183 (9th Cir. 1990)).

8          To determine whether substantial evidence supports a finding, a court must

9  "'consider the record as a whole, weighing both evidence that supports and

10  evidence that detracts from the [Commissioner's] conclusion.'"  Aukland v.

11  Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (quoting Penny v. Sullivan, 2 F.3d

12  953, 956 (9th Cir. 1993)).  If the evidence can reasonably support either affirming

13  or reversing the ALJ's conclusion, a court may not substitute its judgment for that

14  of the ALJ.  Robbins, 466 F.3d at 882 (citing Flaten, 44 F.3d at 1457).

15  **IV.    DISCUSSION**

16      **A.    The ALJ Properly Evaluated the Severity of Plaintiff's Physical**

17              **Impairments**

18          **1.    Pertinent Law**

19          At step two of the sequential evaluation process, plaintiff has the burden to

20  present evidence of medical signs, symptoms and laboratory findings[3] that

21  establish a medically determinable physical or mental impairment that is severe,

22  and that can be expected to result in death or which has lasted or can be expected

23  to last for a continuous period of at least twelve months.  Ukolov v. Barnhart, 420

24  _____

25          [3]A medical "sign" is "an anatomical, physiological, or psychological abnormality that can
    be shown by medically acceptable clinical and laboratory diagnostic techniques[.]"  Ukolov v.

26  Barnhart, 420 F.3d 1002, 1005 (9th Cir. 2005) (quoting Social Security Ruling ("SSR") 96-4p).

27  A "symptom" is "an individual's own perception or description of the impact of his or her
    physical or mental impairment(s)[.]"  Id. (quoting SSR 96-4p); see also 20 C.F.R.

28  §§ 404.1528(a)-(b), 416.928(a)-(b).

1   F.3d 1002, 1004-05 (9th Cir. 2005) (citing 42 U.S.C. §§ 423(d)(3),

2   1382c(a)(3)(D)); see 20 C.F.R. § 404.1520.  Substantial evidence supports an

3   ALJ's determination that a claimant is not disabled at step two where "there are no

4   medical signs or laboratory findings to substantiate the existence of a medically

5   determinable physical or mental impairment."  Id. (quoting SSR 96-4p).

6        Step two is "a de minimis screening device [used] to dispose of groundless

7   claims."  Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996).  Applying the

8   normal standard of review to the requirements of step two, a court must determine

9   whether an ALJ had substantial evidence to find that the medical evidence clearly

10  established that the claimant did not have a medically severe impairment or

11  combination of impairments.  Webb v. Barnhart, 433 F.3d 683, 687 (9th Cir. 2005)

12  (citation omitted); see also Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir. 1988)

13  ("Despite the deference usually accorded to the Secretary's application of

14  regulations, numerous appellate courts have imposed a narrow construction upon

15  the severity regulation applied here.").  An impairment or combination of

16  impairments can be found "not severe" only if the evidence establishes a slight

17  abnormality that has "no more than a minimal effect on an individual's ability to

18  work."  Webb, 433 F.3d at 686 (citation omitted).

19       **2.    Analysis**

20       Plaintiff contends that reversal or remand is warranted because the ALJ

21  failed to list fibromyalgia or chronic pain syndrome as a severe physical

22  impairment at step two of the sequential evaluation process.  (Plaintiff's Motion at

23  3).  The Court disagrees.

24       First, plaintiff has not presented evidence which suggests that her

25  fibromyalgia is a severe physical impairment.  Although Dr. Andrew Nguyen,

26  plaintiff's treating rheumatologist, diagnosed plaintiff with fibromyalgia, plaintiff

27  points to no evidence in the record of medical signs, symptoms or laboratory

28  findings which support the doctor's diagnosis, much less evidence that plaintiff's

6

fibromyalgia had more than a minimal effect on her ability to work.[4]  Plaintiff correctly points out that in progress notes Dr. Nguyen stated that "[plaintiff] may be having secondary fibromyalgia and may need treatment for fibromyalgia" (AR 383), that plaintiff's "[s]ymptoms are likely from fibromyalgia or other diffuse myofascial pain syndrome" (AR 395), and that plaintiff had "[m]ore myofacial pain-fibromyalgia like than arthritis."  (Plaintiff's Motion at 3) (citing AR 383, 395, 655).  A consultative examiner also noted that plaintiff had a family history of fibromyalgia, and that plaintiff's medical records contained "a report by Dr. Angoian with assessment of fibromyalgia."  (Plaintiff's Motion at 3) (citing AR 420, 423).  Contrary to plaintiff's suggestion, however, such equivocal and/or conclusory statements, without more, are insufficient to establish a severe impairment at step two.  Ukolov, 420 F.3d at 1004-05.

Even assuming that the ALJ erred in neglecting to list fibromyalgia and chronic pain syndrome as a severe impairment at Step 2, any error was harmless.  See Lewis v. Astrue, 498 F.3d 909, 911 (9th Cir. 2007) (failure to address particular impairment at step two is harmless if ALJ fully evaluates claimant's medical condition in later steps of sequential evaluation process); see also Stout,

---

[4]While there are no laboratory tests for the presence or severity of fibromyalgia, courts have held that a physical examination which, *inter alia*, assesses the location and severity of a patient's pain and tests whether a patient has tenderness at a certain number of fixed locations on her body is a medically acceptable technique for diagnosing the condition.  See, e.g., Rollins v. Massanari, 261 F.3d 853, 855 (9th Cir. 2001) (recognizing that "[t]he principal symptoms [of fibromyalgia] are 'pain all over,' fatigue, disturbed sleep, stiffness, and 'the only symptom that discriminates between it and other diseases of a rheumatic character' multiple tender spots, more precisely 18 fixed locations on the body . . . that when pressed firmly cause the patient to flinch") (citation and internal quotation marks omitted); Perl v. Barnhart, 2005 WL 579879, *3 (E.D. Pa. Mar. 10, 2005) ("[R]eports from treating physicians that document symptoms [are important] in determining residual functional capacity of claimant suffering from fibromyalgia because such observations may be the only type of 'medically acceptable clinical technique' available.") (citation omitted); see also SSR 99–2p, n.3 (Social Security Administration follows criteria established by the American College of Rheumatology to determine whether a claimant has the medically determinable impairment of fibromyalgia.).

454 F.3d at 1055 (ALJ's error harmless where it is "inconsequential to the ultimate nondisability determination").  In the administrative decision the ALJ (1) stated that she had "considered the functional limitations resulting from all of [plaintiff's] medically determinable impairments" when assessing plaintiff's residual functional capacity (AR 12); (2) cited, *inter alia*, the treatment notes from Dr. Nguyen referenced above, and stated that such records reflected that plaintiff had "received routine conservative treatment for . . . fibromyalgia. . ." (AR 16) (citing, *inter alia*, Exhibits 2F at 116 [AR 383]; 2F at 128 [AR 395]; 13F at 13, 34 [AR 634, 655]); and (3) noted that she had "assessed a more restrictive level of functional capacity than the State agency review physicians in order to give the [plaintiff] every benefit of the doubt for treatment related to pain from her diagnosed <u>musculoskeletal</u> disorders" (AR 19) (emphasis added).  Plaintiff points to no physical limitations related to her fibromyalgia beyond those already accounted for in the ALJ's residual functional capacity assessment.

Accordingly, a remand or reversal on this basis is not warranted.

**B.     The ALJ Did Not Materially Err in Evaluating the Medical Evidence**

Plaintiff contends that a remand or reversal is required because the ALJ (1) failed properly to consider the opinions of Dr. Ibrahim M. Yashruti, a state-agency examining orthopedic surgeon; and (2) included limitations in plaintiff's residual functional capacity assessment that were not supported by substantial evidence (*i.e.*, that plaintiff would be "off task five percent of the work day" and "absent from work one to two work days a month").  (Plaintiff's Motion at 3-5). The Court disagrees.

**1.     Pertinent Law**

In Social Security cases, courts employ a hierarchy of deference to medical opinions depending on the nature of the services provided.  Courts distinguish among the opinions of three types of physicians:  those who treat the claimant

8

1  ("treating physicians") and two categories of "nontreating physicians," namely

2  those who examine but do not treat the claimant ("examining physicians") and

3  those who neither examine nor treat the claimant ("nonexamining physicians").

4  Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996) (footnote reference omitted).  A

5  treating physician's opinion is entitled to more weight than an examining

6  physician's opinion, and an examining physician's opinion is entitled to more

7  weight than a nonexamining physician's opinion.[5]  See id.  In general, the opinion

8  of a treating physician is entitled to greater weight than that of a non-treating

9  physician because the treating physician "is employed to cure and has a greater

10  opportunity to know and observe the patient as an individual."  Morgan v.

11  Commissioner of Social Security Administration, 169 F.3d 595, 600 (9th Cir.

12  1999) (citing Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987)).

13     The treating physician's opinion is not, however, necessarily conclusive as

14  to either a physical condition or the ultimate issue of disability.  Magallanes v.

15  Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (citing Rodriguez v. Bowen, 876 F.2d

16  759, 761-62 & n.7 (9th Cir. 1989)).  Where a treating physician's opinion is not

17  contradicted by another doctor, it may be rejected only for clear and convincing

18  reasons.  Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007) (citation and internal

19  quotations omitted).  The ALJ can reject the opinion of a treating physician in

20  favor of another conflicting medical opinion, if the ALJ makes findings setting

21  forth specific, legitimate reasons for doing so that are based on substantial

22  evidence in the record.  Id. (citation and internal quotations omitted).  "The ALJ

23  must do more than offer his conclusions."  Embrey v. Bowen, 849 F.2d 418, 421-

24  22 (9th Cir. 1988).  "He must set forth his own interpretations and explain why

25

26     [5]Cf. Le v. Astrue, 529 F.3d 1200, 1201-02 (9th Cir. 2008) (not necessary or practical to
27  draw bright line distinguishing treating physicians from non-treating physicians; relationship is
   better viewed as series of points on a continuum reflecting the duration of the treatment
28  relationship and frequency and nature of the contact) (citation omitted).

they, rather than the [physician's], are correct."  Id.  "Broad and vague" reasons for rejecting the treating physician's opinion do not suffice.  McAllister v. Sullivan, 888 F.2d 599, 602 (9th Cir. 1989).  These standards also apply to opinions of examining physicians.  See Carmickle v. Commissioner, Social Security Administration, 533 F.3d 1155, 1164 (9th Cir. 2008) (quoting Lester, 81 F.3d at 830-31); Andrews v. Shalala, 53 F.3d 1035, 1042-44 (9th Cir. 1995).

### 2.   Dr. Yashruti

On July 10, 2009, Dr. Yashruti performed a Complete Orthopaedic Evaluation of plaintiff which included a physical examination.  (AR 419-24).  Based on his examination of plaintiff, Dr. Yashruti opined that plaintiff (i) could sit, stand, walk, squat, kneel, crouch and crawl with no limitations; (ii) lift 50 pounds occasionally and 25 pounds frequently; and (iii) could reach with her arms and manipulate with her hands frequently.  (AR 424).  Plaintiff contends that the ALJ failed to consider Dr. Yashruti's opinions that plaintiff was only able "to reach with the arms and manipulate with the hands frequently," and thus erroneously ignored probative medical opinion evidence.  (Plaintiff's Motion at 3-4) (citing AR 424).  Consequently, plaintiff contends that the ALJ also erred at step four because she failed to include in the hypothetical question posed to the vocational expert either of the foregoing limitations on plaintiff's abilities to reach and manipulate.  (Plaintiff's Motion at 4).  This Court concludes that the ALJ did not materially err in either respect.

Simply because the ALJ did not expressly reference Dr. Yashruti's opinion that plaintiff "[was] able to reach with the arms and manipulate with the hands frequently" (AR 424) does not mean she failed to consider such evidence.  See Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered[.]").  The ALJ was not required to discuss every piece of evidence in the record.  See Howard v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003) (citations omitted).  In

the administrative decision, the ALJ stated that she gave "significant weight" to Dr. Yashruti's opinions, and noted that the examining physician found "no more than medium limits" in any of plaintiff's abilities.  (AR 19) (citing Exhibit 4F at 1-7 [AR 419-25]).  The decision also reflects that, given plaintiff's subjective pain, the ALJ determined that "more restrictive [] limits" should be included in the residual functional capacity assessment.  (AR 19).  In light of the foregoing, and the ALJ's detailed discussion of the medical evidence in general, it is reasonable to infer that the ALJ accounted for any limits Dr. Yashruti found in plaintiff's abilities to reach and manipulate by generally including limitations in plaintiff's residual functional capacity assessment that were "more restrictive" than those found by Dr. Yashruti.  See Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002) (ALJ can meet burden by setting out detailed and thorough summary of facts and conflicting clinical evidence, stating his interpretation thereof, and making findings) (citations and quotations omitted); Magallanes, 881 F.2d at 751, 755 (same; ALJ need not recite "magic words" to reject a physician's opinion – court may draw specific and legitimate inferences from ALJ's opinion).

Even so, to the extent the ALJ's failure explicitly to reject Dr. Yashruti's reaching and manipulation limitations could be considered error, the Court concludes that any such error was harmless because it was inconsequential to the ALJ's ultimate nondisability determination.  See Sawyer v. Astrue, 303 Fed. Appx. 453, 455 (9th Cir. 2008)[6] (error in ALJ's failure properly to consider medical opinion evidence considered harmless "where the mistake was nonprejudicial to the claimant or irrelevant to the ALJ's ultimate disability conclusion. . . .") (citing Stout, 454 F.3d at 1055).  First, plaintiff fails to demonstrate that any limitations stemming from Dr. Yashruti's findings are not

_____

[6]Courts may cite unpublished Ninth Circuit opinions issued on or after January 1, 2007. See U.S. Ct. App. 9th Cir. Rule 36-3(b); Fed. R. App. P. 32.1(a).

11

already accounted for in the ALJ's residual functional capacity assessment which, according to the ALJ, imposed "light limits" that were "more restrictive" than the limitations imposed by Dr. Yashruti. (AR 19). Second, Dr. Yashruti did not opine that plaintiff could not work for any twelve-month period. See Matthews v. Shalala, 10 F.3d 678, 680-81 (9th Cir. 1993) (in upholding the Commissioner's non-disability decision, the Court emphasized: "None of the doctors who examined [claimant] expressed the opinion that he was totally disabled"); accord Curry v. Sullivan, 925 F.2d 1127, 1130 n.1 (9th Cir. 1990) (upholding Commissioner and noting that after surgery, no doctor suggested claimant was disabled). Finally, the ALJ found that plaintiff could still perform her past relevant work as a president, sales representative (advertising), and sales representative (security systems). (AR 50-51). According to the Dictionary of Occupational Titles ("DOT"), none of plaintiff's past relevant jobs requires more than "occasional[]" reaching and handling." See DOT § 189.117-026 (president); DOT § 254.357-014 (sales representative, advertising); DOT § 259.257-22 (sales representative, security systems). Therefore, any failure expressly to account for a limitation to frequent reaching and handling was inconsequential here because the reaching and handling requirements of plaintiff's past relevant jobs did not exceed plaintiff's abilities in those areas found by Dr. Yashruti.[7] See, e.g., Molina, 674 F.3d at 1115 ("[E]ven if the ALJ erred in failing to mention the claimant's

---

[7]To the extent plaintiff contends that a remand or reversal is required because the ALJ posed an incomplete hypothetical to the vocational expert (Plaintiff's Motion at 4), her claim lacks merit. While the ALJ was entitled to consider the vocational expert's testimony at step four, such testimony was not required where, like here, the ALJ found that the claimant could return to her past relevant work. See Crane v. Shalala, 76 F.3d 251, 255 (9th Cir. 1996) (the determination at step four that a claimant can return to his past relevant work need not be supported by vocational testimony); see also Matthews v. Shalala, 10 F.3d 678, 681 (9th Cir. 1993) (finding that "since [the claimant] failed to show that he was unable to return to his previous job as a receiving clerk/inspector, the burden of proof remained with [the claimant]" and "[t]he vocational expert's testimony was thus useful, but not required").

1  inability to stay in one position to the vocational expert, such error was harmless
2  because the claimant had not shown that he was unable to return to his previous
3  job as a receiving clerk and inspector, which, the record demonstrated, involved a
4  combination of sitting and standing.") (citing Matthews, 10 F.3d at 681).

5      Accordingly, a remand or reversal on this basis is not warranted.

6          **3.    Other Limitations**

7      Plaintiff contends that the ALJ erroneously included in her residual
8  functional capacity assessment additional limitations that were not supported by
9  substantial evidence – specifically, that plaintiff would be "off task five percent of
10  the work day" and "absent from work one to two work days a month". (Plaintiff's
11  Motion at 4) (citing AR 14). The Court disagrees.

12      To the extent the ALJ included additional limitations in plaintiff's residual
13  functional capacity that were not supported by substantial evidence, any error was
14  harmless. See Stout, 454 F.3d at 1055 (ALJ's decision may be affirmed where
15  ALJ's "mistake was nonprejudicial to the claimant"). Moreover, while plaintiff
16  argues that the medical evidence actually reflects that she would be off task "more
17  than 10% of the work day" and that she "would undoubtedly miss well over 2
18  work days a month due to her ongoing symptoms and limitations" (Plaintiff's
19  Motion at 4), the Court will not second guess the ALJ's implicit determination that
20  such evidence does not. Robbins, 466 F.3d at 882 (citation omitted).

21      Accordingly, a remand or reversal on this basis is not warranted.

22      **C.    The ALJ Properly Evaluated Plaintiff's Credibility**

23          **1.    Pertinent Law**

24      Questions of credibility and resolutions of conflicts in the testimony are
25  functions solely of the Commissioner. Greger v. Barnhart, 464 F.3d 968, 972 (9th
26  Cir. 2006). If the ALJ's interpretation of the claimant's testimony is reasonable
27  and is supported by substantial evidence, it is not the court's role to "second-
28  guess" it. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

An ALJ is not required to believe every allegation of disabling pain or other non-exertional impairment. <u>Orn</u>, 495 F.3d at 635 (citing <u>Fair v. Bowen</u>, 885 F.2d 597, 603 (9th Cir. 1989)). If the record establishes the existence of a medically determinable impairment that could reasonably give rise to symptoms assertedly suffered by a claimant, an ALJ must make a finding as to the credibility of the claimant's statements about the symptoms and their functional effect. <u>Robbins</u>, 466 F.3d at 883 (citations omitted). Where the record includes objective medical evidence that the claimant suffers from an impairment that could reasonably produce the symptoms of which the claimant complains, an adverse credibility finding must be based on clear and convincing reasons. <u>Carmickle</u>, 533 F.3d at 1160 (citations omitted). The only time this standard does not apply is when there is affirmative evidence of malingering. <u>Id.</u> The ALJ's credibility findings "must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony." <u>Moisa v. Barnhart</u>, 367 F.3d 882, 885 (9th Cir. 2004).

To find the claimant not credible, an ALJ must rely either on reasons unrelated to the subjective testimony (<em>e.g.</em>, reputation for dishonesty), internal contradictions in the testimony, or conflicts between the claimant's testimony and the claimant's conduct (<em>e.g.</em>, daily activities, work record, unexplained or inadequately explained failure to seek treatment or to follow prescribed course of treatment). <u>Orn</u>, 495 F.3d at 636; <u>Robbins</u>, 466 F.3d at 883; <u>Burch</u>, 400 F.3d at 680-81; SSR 96-7p. Although an ALJ may not disregard such claimant's testimony solely because it is not substantiated affirmatively by objective medical evidence, the lack of medical evidence is a factor that the ALJ can consider in his credibility assessment. <u>Burch</u>, 400 F.3d at 681.

## 2. Analysis

Plaintiff contends that the ALJ inadequately evaluated the credibility of her subjective complaints. (Plaintiff's Motion at 5-11). The Court disagrees.

14

First, the ALJ properly discredited plaintiff's subjective complaints as inconsistent with plaintiff's daily activities and other conduct.  See Thomas, 278 F.3d at 958-59 (inconsistency between the claimant's testimony and the claimant's conduct supported rejection of the claimant's credibility); Verduzco v. Apfel, 188 F.3d 1087, 1090 (9th Cir. 1999) (inconsistencies between claimant's testimony and actions cited as a clear and convincing reason for rejecting the claimant's testimony).  Here, plaintiff alleged that she was unable to work due to chronic/constant pain and depression, that she could walk only 100 yards, could sit for only 20-30 minutes, and could stand still only for five minutes at a time.  (AR 33-35, 204, 242-49).  Nonetheless, as the ALJ noted, contrary to plaintiff's allegations of disabling symptoms, plaintiff has essentially admitted to engaging in "a somewhat normal level of daily activity and interaction."  For example, in a pain questionnaire dated May 26, 2009, plaintiff stated that she was "able to do errands such as going to the Post Office or grocery store . . . [and] light housekeeping chores without assistance."  (AR 202-04).  In a function report of the same date, plaintiff stated that she was able to do household chores including water plaints, pick up around the house, compost, and clean out the refrigerator.  (AR 207).  In a progress note dated June 30, 2010, the doctor noted that plaintiff reportedly was able to do activities of daily living.  (AR 714-15).  At the hearing plaintiff testified that on a typical day she would do "simple chores" around the house including laundry, making the bed, washing dishes, and preparing simple meals, but her "housekeeper" would do the mopping, sweeping and vacuuming.  (AR 28-29).  Plaintiff also testified that she was able to care for her own personal hygiene needs, dress and shower without assistance.  (AR 29).  Plaintiff also testified that she would regularly spend time at home with family, rent movies, read a lot, talk on the telephone an hour each day, go out to dinner with family once or twice a month, attended public social functions (e.g., Pageant of the Masters) every month or two, and would attend church twice a month for an hour,

15

1  with "difficulty on occasion." (AR 30-35). It was reasonable for the ALJ to

2  conclude that the foregoing activities were "[in]consistent with the very

3  diminished and limited activities" otherwise described by plaintiff, and thus

4  "undermined the credibility of [plaintiff's] allegations of disabling functional

5  limitations." (AR 15).

6      Second, the ALJ properly discredited plaintiff's subjective complaints due

7  to internal conflicts within plaintiff's own statements and her conduct. See Light

8  v. Social Security Administration, 119 F.3d 789, 792 (9th Cir.), as amended

9  (1997) (in weighing plaintiff's credibility, ALJ may consider "inconsistencies

10 either in [plaintiff's] testimony or between his testimony and his conduct"). For

11 example, as the ALJ noted, contrary to plaintiff's complaints that ongoing and

12 constant pain would keep plaintiff up at night, and that her pain medication caused

13 dry mouth, lethargy, feeling detached, and severe constipation which required

14 medical attention (AR 14, 36) (citing Exhibits 5E [AR 202-04]; 6E at 2 [AR 206];

15 12E at 2 [AR 243]), plaintiff repeatedly reported to her treating physicians that her

16 pain had improved, that she had been strictly complying with her medications, and

17 that her pain was fairly well controlled with her anti-rheumatoid medication, and

18 plaintiff denied having any significant side effects from her medication. (AR 14-

19 15) (citing Exhibits 15F at 18-33 [AR 709-24]; 16F at 7-37 [AR 731-61]). As the

20 ALJ also pointed out, contrary to plaintiff's testimony that her condition

21 "dramatically" changed her life and that she no longer enjoyed work or life (AR

22 37), plaintiff stated that she maintained excellent relationships with family, friends

23 and neighbors. (AR 15) (citing Exhibits 6E at 6 [AR 210]; 12F at 10 [AR 581]; 15

24 F at 24-26 [AR 715-17]). In addition, in one of her function reports, plaintiff

25 stated that she was "too unstable to shower" (AR 243), yet at the hearing plaintiff

26 acknowledged that she could "take a shower . . . without assistance" (AR 29).

27      Third, the ALJ properly discounted plaintiff's credibility based on

28 plaintiff's unexplained failure to seek treatment consistent with the alleged

severity of her subjective complaints.  See Bunnell v. Sullivan, 947 F.2d 341, 346
(9th Cir. 1991) (en banc) (In assessing credibility, the ALJ may properly rely on
plaintiff's unexplained failure to request treatment consistent with the alleged
severity of her symptoms.); Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999)
(In assessing credibility, ALJ properly considered doctor's failure to prescribe and
claimant's failure to request any serious medical treatment for supposedly
excruciating pain); see Tidwell v. Apfel, 161 F.3d 599, 602 (9th Cir. 1999) (lack
of treatment and reliance upon nonprescription pain medication "clear and
convincing reasons for partially rejecting [claimant's] pain testimony"); Fair, 885
F.2d at 604 (ALJ permissibly considered discrepancies between the claimant's
allegations of "persistent and increasingly severe pain" and the nature and extent
of treatment obtained).  For example, as the ALJ noted, the medical evidence
reflects that plaintiff received "routine conservative treatment" for her alleged
physical impairments (i.e., pain medicine, muscle relaxers, Humira injections,
Remicade infusions, physical therapy, weight management, healthy diet, home
exercise program, Suboxone treatment, and acupuncture treatment).  (AR 16)
(citing Exhibits 1F at 1-9 [AR 259-67]; 2F at 80-144 [AR 347-411]; 8F at 1-67
[AR 444-510]; 11F at 2-4 [AR 569-71]; 13F-16F [AR 622-761]).  In addition, as
the ALJ noted, apart from a brief hospitalization in July 2009, plaintiff received
conservative treatment for her mental condition (i.e., participation in mental health
groups, individual therapy, medication).  (AR 18) (citing Exhibits 9F at 1-52 [AR
511-62]; 12F at 1-50 [AR 572-621]).  While plaintiff argues that the foregoing
evidence reflects "anything but 'conservative' [treatment]" (Plaintiff's Motion at
10), the Court will not second guess the ALJ's reasonable determination
otherwise.  Robbins, 466 F.3d at 882 (citation omitted).

Finally, the ALJ properly discounted plaintiff's credibility in part because
plaintiff's pain allegations were not fully corroborated by the objective medical
evidence.  See Rollins, 261 F.3d at 857 ("While subjective pain testimony cannot

be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects.") (citation omitted).  For example, as the ALJ noted, despite plaintiff's claim that she was severely depressed and was even hospitalized at one point for her depression, the medical evidence reflects that plaintiff regularly attended therapy sessions, and that plaintiff's mental status evaluations over time were consistently unremarkable.  (AR 15) (citing Exhibits 6E at 5 [AR 209]; 12E at 5 [AR 246]; 8F at 40 [AR 483]; 9F at 5-54 [AR 515-64]; 12F at 5-50 [AR 576-621]).  In addition, as the ALJ noted, other objective medical testing produced relatively unremarkable results.  (AR 16-18) (citing, *inter alia*, Exhibit 1F at 2-3 [AR 261-62] (December 19, 2008 CT scan of plaintiff's brain essentially normal); Exhibit 1F at 2-3 [AR 260-62] (MRI of plaintiff's spine showed no evidence of significant progression over a two year period (*i.e.*, from January 11, 2007 to January 4, 2009)); Exhibits 2F at 133 [AR 400], 13F at 9-10 [AR 630-31] (February 13, 2009 bone scan of plaintiff's whole body "unremarkable" except for minimal radionuclide uptake in knees, ankles and feet, and possible degenerative joint disease in shoulder and sterno clavicular area); Exhibit 2F at 135 [AR 402] (February 13, 2009 x-ray of S1 joints showed slight increase in boney sclerotic changes in right sacroiliac joint but that remaining bone structure was "otherwise unremarkable"); Exhibit 2F at 142 [AR 409] (April 6, 2009 x-ray of plaintiff's chest showed "[n]o significant abnormality")).

Accordingly, a remand or reversal on this basis is not warranted.

**D.    The ALJ Properly Considered Lay Witness Evidence From Plaintiff's Domestic Partner**

Plaintiff contends that the ALJ failed to provide sufficient reasons for rejecting statements provided by plaintiff's domestic partner, Sicley Ann Foster, regarding plaintiff's symptoms and functional and mental abilities – specifically, third-party function reports dated May 26, 2009 (AR 213-20) and October 26,

2009 (AR 234-41), respectively, and a letter from Ms. Foster dated September 16, 2010, which plaintiff submitted after the hearing (AR 154). (Plaintiff's Motion at 11-13). This Court disagrees.

### 1.   Pertinent Law

Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so. Stout, 454 F.3d at 1056 (citations omitted); Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001); see also Robbins, 466 F.3d at 885 (ALJ required to account for all lay witness testimony in discussion of findings) (citation omitted); Regennitter v. Commissioner of Social Security Administration, 166 F.3d 1294, 1298 (9th Cir. 1999) (testimony by lay witness who has observed claimant is important source of information about claimant's impairments); Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996) (lay witness testimony as to claimant's symptoms or how impairment affects ability to work is competent evidence and therefore cannot be disregarded without comment) (citations omitted); Sprague, 812 F.2d at 1232 (ALJ must consider observations of non-medical sources, e.g., lay witnesses, as to how impairment affects claimant's ability to work). The standards discussed in these authorities appear equally applicable to written statements. Cf. Schneider v. Commissioner of Social Security Administration, 223 F.3d 968, 974-75 (9th Cir. 2000) (ALJ erred in failing to consider letters submitted by claimant's friends and ex-employers in evaluating severity of claimant's functional limitations).

In cases in which "the ALJ's error lies in a failure to properly discuss competent lay testimony favorable to the claimant, a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." Robbins, 466 F.3d at 885 (quoting Stout, 454 F.3d at 1055-56).

///

1          **2.     Analysis**

2          First, as the ALJ noted, Ms. Foster's statements in function reports

3    regarding plaintiff's limitations were essentially the same as plaintiff's statements

4    in her own function reports.  (AR 15; <u>compare</u> AR 205-12, 242-49 [plaintiff's

5    function reports] <u>with</u> AR 213-20, 234-41 [Ms. Foster's function reports]).  Since,

6    as discussed above, the ALJ provided clear and convincing reasons for rejecting

7    plaintiff's own subjective complaints, it follows that the ALJ also gave germane

8    reasons for rejecting plaintiff's domestic partner's similar statements.  <u>See</u>

9    <u>Valentine v. Commissioner of Social Security Administration</u>, 574 F.3d 685, 693-

10   94 (9th Cir. 2009) (ALJ properly discounted wife's testimony for same reasons

11   used to discredit claimant's complaints which were similar).

12         Second, to the extent the ALJ failed expressly to mention the September 16,

13   2010 letter from Ms. Foster submitted after the hearing, any error was harmless

14   since the statements in the letter were merely cumulative of some of the statements

15   Ms. Foster made in her two function reports which the ALJ properly discredited.

16   <u>See</u> <u>Zerba v. Commissioner of Social Security Administration</u>, 279 Fed. Appx.

17   438, 440 (9th Cir. 2008) (failure to address husband's cumulative lay testimony

18   harmless error); <u>cf.</u> <u>Molina</u>, 674 F.3d at 1121-22 (citation omitted) ("[A]n ALJ's

19   failure to comment upon lay witness testimony is harmless where 'the same

20   evidence that the ALJ referred to in discrediting the claimant's claims also

21   discredits the lay witness's claims.'" (citation and alterations omitted).

22         Finally, the ALJ discounted the credibility of Ms. Foster's statements

23   because the lay witness was biased (*i.e.*, "she [had] a financial motivation to

24   increase the household income as she lives with and . . . supports [plaintiff]").

25   (AR 15).  As plaintiff correctly notes, the ALJ was not entitled to discount Ms.

26   Foster's statements merely because, as plaintiff's domestic partner, she was an

27   interested party.  <u>See</u> <u>Regennitter</u>, 166 F.3d at 1298.  Any such error was harmless,

28   however, because the remaining reasons identified by the ALJ for discrediting the

20

lay statements are supported by substantial evidence and any such error would not negate the validity of the ALJ's ultimate credibility conclusion in this case.  Cf. Molina, 674 F.3d at 1115 (Where some reasons supporting an ALJ's credibility analysis are found invalid, the error is harmless if (1) the remaining valid reasons provide substantial evidence to support the ALJ's credibility determination, and (2) "the error does not negate the validity of the ALJ's ultimate conclusion.") (citations and internal quotation marks omitted).

Accordingly, a remand or reversal on this basis is not warranted.

## V.      CONCLUSION

For the foregoing reasons, the decision of the Commissioner of Social Security is affirmed.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED:  December 21, 2012

_____/s/_____
Honorable Jacqueline Chooljian
UNITED STATES MAGISTRATE JUDGE

21